FILED

07/23/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0454

DA 25-0454

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 164

JUBILEE NESTA SARA DA',

      Plaintiff and Appellant,

  v.

CITY OF BOZEMAN,

      Defendant and Appellee.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-16-2022-953-B
Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Casey Magan, Russell Waddell, Waddell & Magan, PC, Bozeman, Montana

      For Appellee:

            Brian L. Taylor, Taylor Nicastro Browne LLC, Billings, Montana

            Steven M. Hamilton, Hall & Evans, LLC, Billings, Montana

                  Submitted on Briefs: April 1, 2026

                           Decided:  July 23, 2026

Filed:

_____
                Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Appellant Jubilee Nesta Sara Da' (Sara Da') appeals from the judgment entered after a jury trial in the Eighteenth Judicial District, Gallatin County, in favor of the City of Bozeman (City), challenging the District Court's pretrial ruling excluding expert testimony and argument that an inoperative streetlight at the intersection where Sara Da' was struck by a vehicle contributed to her injuries. The District Court based that ruling on its prior order granting summary judgment in favor of NorthWestern Energy and concluded that, because the streetlight was owned by NorthWestern Energy, the inoperative streetlight was not actionable against the City under premises liability and that the public duty doctrine (PDD) therefore shielded the City from streetlight-related tort liability. For the reasons set forth below, we reverse the District Court's holding and remand for a new trial so that Sara Da' may provide the jury with liability evidence regarding the inoperative streetlight.

¶2 We restate the dispositive issue on appeal:

*Whether the District Court erred by ruling, as a matter of law, that the PDD barred Sara Da' from introducing expert testimony and other liability evidence that the inoperative streetlight contributed to the unsafe condition of the City's intersection and to Nelson's collision with Sara Da'.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 On October 14, 2019, Sara Da' was returning to graduate housing located on Montana State University's campus grounds where she lived with her mother and two sisters. While crossing the intersection of West College Street and 15th Street (the Intersection), Sara Da' was struck by Tasha Nelson's (Nelson) vehicle.

2

¶4     The Intersection, along with intersections around the Irving School and other intersections on West College between 15th Avenue and 18th Avenue, had been a part of the City's "Safe Route to School" program in 2008 and 2013. To implement the program, the City retained a third-party consultant, Alta Planning and Design, to study numerous locations within the City and receive recommendations on how to improve the safety of its intersections.

¶5     Sara Da' brought the instant suit for her injuries. Sara Da' alleges the crosswalk—on a busy intersection adjacent to a large college campus with mixed traffic composed of vehicles, bicyclists, and pedestrians—was hazardous because it lacked paint markings, the signage was inadequate, and the streetlight positioned over the Intersection was inoperative and lighting was, thus, inadequate. Sara Da's negligence and premises liability claims named as defendants Nelson, the City as owner and maintainer of the Intersection, and NorthWestern Energy as the owner and maintainer of the inoperative streetlight positioned above the Intersection.

¶6     Prior to trial, the City moved for summary judgment, arguing that the PDD immunized it from liability because the duty to maintain crosswalks is one that is owed to the public generally, not Sara Da' individually. The District Court, in denying the City's motion, relied on this Court's precedent in *Gatlin-Johnson ex rel. Gatlin v. City of Miles City*, 2012 MT 302, 367 Mont. 414, 291 P.3d 1129, and concluded that the PDD is inapplicable to premises liability claims, such as Sara Da's.

¶7     Following this order, NorthWestern Energy moved for summary judgment arguing that it did not owe Sara Da' a duty to maintain the inoperative streetlight. In addressing

3

NorthWestern Energy's duty as the utility company that owned and maintained the streetlight, the District Court applied Restatement (Second) of Torts, § 324A (Am. L. Inst. 1965) and this Court's decision in *Maryland Casualty Company v. Asbestos Claims Court*, 2020 MT 70, 399 Mont. 279, 460 P.3d 882. Under that third-party-undertaking framework, liability may arise where a claimant:

> in fact relied on the subject party to competently perform the undertaking, or a distinct aspect of the undertaking, only if the claimant or third party was in fact aware of the undertaking, or a distinct aspect of it, and that awareness induced or caused the subject to forgo other precautionary or remedial measures against the type of risk at issue.

*Md. Cas. Co.*, ¶ 47.[1] Relying on *Maryland Casualty Company*, the District Court held that Sara Da' had presented no evidence that the City's agreement with NorthWestern Energy had induced her to forego other precautionary or remedial measures against the risk of crossing College Street without the streetlight. The District Court found Sara Da' had not set forth any facts suggesting she had relied on the City or NorthWestern Energy to make the crosswalk safe. Upon finding there was no genuine dispute of material facts, the District Court held NorthWestern Energy was entitled to summary judgment.

---

[1] The Restatement (Second) of Torts § 324A(c) addresses the situation of a plaintiff seeking liability for an individual who undertook a duty to perform a service or aid, and the plaintiff is claiming to have relied on that service. In *Maryland Casualty Company*, this Court applied The Restatement (Second) of Torts § 324A(c) to plaintiffs' claims against their employer's insurance company, Maryland Casualty Company (MCC). *Md. Cas. Co.*, ¶¶ 47, 53-55. The Court concluded that there was no evidence that the employees relied on the MCC's attempts to mitigate the asbestos contamination provided to the employer, and therefore there was no duty created under The Restatement (Second) of Torts § 324A(c). *Md. Cas. Co.*, ¶ 55. However, under § 324A(c) there was sufficient evidence that the plaintiffs' employer relied on MCC's voluntarily undertaking services that had become a distinct aspect of the employer's workplace safety and risk management precautions to create a duty owed by MCC to the employer. *Md. Cas. Co.*, ¶ 54.

4

¶8     In February 2025, during the final pretrial hearing, counsel for the City argued that evidence regarding the inoperative streetlight should not come in during the trial.  To support its contention, the City relied on the District Court's order granting NorthWestern Energy's summary judgment.  During the final pretrial conference, the City argued that because the District Court held premises liability is inapplicable to the streetlight, the PDD shields the City from liability for the inoperative streetlight.  Based on these contentions, the City maintained that evidence regarding the streetlight should not be admitted.  At the conclusion of the final pretrial conference the District Court ordered both parties to submit further briefing on the matter.

¶9     After submission of briefs on the first morning of trial, the District Court advised the parties of its decision outside the presence of the jury.  The District Court began by referring to its order granting NorthWestern Energy summary judgment and treated its discussion of the streetlight's relationship to premises liability as the law of the case for purposes of the claims against the City.  The District Court reasoned, "The inopera[tive] streetlight is not actionable under a theory of premises liability.  As such, the public duty doctrine applies, shielding the City from tort liability with respect to the streetlight."  The District Court informed the parties that the effect of this ruling would be that no expert testimony would be introduced regarding the causal effect of the inoperative streetlight on the accident.

¶10    The jury ultimately awarded a verdict of $1.6 million in damages to Sara Da', distributing 35% of the comparative fault to Sara Da' and 65% to Nelson.  Following the verdict Sara Da' filed the instant appeal and Nelson declared bankruptcy.

5

## STANDARD OF REVIEW

¶11 A district court's evidentiary rulings are generally reviewed for abuse of discretion. *Bueling v. Swift*, 1998 MT 112, ¶ 24, 288 Mont. 472, 958 P.2d 694. But when an evidentiary ruling rests upon an application of law, we review the underlying legal determination de novo for correctness. *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶¶ 52-53, 345 Mont. 12, 192 P.3d 186.

¶12 Here, the District Court did not exclude the streetlight causation evidence based on ordinary evidentiary grounds such as foundation, relevance, or prejudice. It excluded the evidence because it had concluded, as a matter of law, that the inoperative streetlight was not actionable as part of a premises-liability theory and that the PDD shielded the City from liability with respect to the streetlight. We, therefore, review the legal basis of the ruling de novo. If that basis is incorrect, we then consider whether the exclusion affected Sara Da's substantive rights. *Seltzer v. Morton*, 2007 MT 62, ¶ 65, 336 Mont. 225, 154 P.3d 561. On review of an order granting summary judgment, the evidence is viewed in a light most favorable to the nonmoving party and we draw all reasonable inferences in favor of the nonmoving party. *Peterson v. Eichhorn*, 2008 MT 250, ¶ 12, 344 Mont. 540, 189 P.3d 615.

## DISCUSSION

¶13 In her appeal Sara Da' argues that it was error for the District Court to conclude that the City could not be held liable under premises liability and that the PDD applied, preventing the City from owing a duty to Sara Da'. Further, Sara Da' argues, the District Court erred by extending this conclusion to prevent causation evidence at trial regarding

6

the streetlight. The City responds that the District Court was correct to find no duty was owed to Sara Da' because the City could not be held liable for an inoperative streetlight that it did not own, operate, or maintain. The City further contends any duty that the City owed to Sara Da' was barred by the PDD as the streetlight could not be considered a part of premises liability.

¶14 For the reasons set forth below, we reverse.

**The Public Duty Doctrine Does Not Apply in Sara Da's Case**

¶15 The Montana Constitution and statutory tort-liability framework categorically confirm that governmental entities are not immune from suit for injury to a person or property merely because they are government actors. Mont. Const. art. II, § 18; §§ 2-9-101, -102, MCA. The Legislature has provided:

> any person is legally entitled to recover as damages because of personal injury or property damage caused by a negligent or wrongful act or omission committed by any employee of the governmental entity while acting within the scope of employment, under circumstances where the governmental entity, if a private person, would be liable to the claimant for the damages under the laws of the state.

Section 2-9-101, MCA. The PDD serves the important interest of preventing the court's interference with the exercise and administration of governmental processes that benefit the community as a whole. *Kent v. City of Columbia Falls*, 2015 MT 139, ¶ 23, 379 Mont. 190, 350 P.3d 9; *Bassett v. Lamantia*, 2018 MT 119, ¶ 12, 391 Mont. 309, 315, 417 P.3d 299 (citations omitted). The PDD is properly applied to cases in which the governmental defendant owed no duty to the individual plaintiff because the duty is owed to the public generally. *Gatlin-Johnson*, ¶ 15 (collecting cases).

7

¶16     When the PDD is found to apply, the government defendant owes no duty to a claimant unless a "special duty" arises under one of four circumstances: (1) the plaintiff is a member of a particular group under which a statute is intended to protect that class of person; (2) the government agent has undertaken a specific action to protect that class of person that the plaintiff is a member of; (3) the government's actions have induced a detrimental reliance by a member of the public; and (4) some circumstances under which the governmental defendant has actual custody of the plaintiff or a third party which causes harm to the plaintiff. *Kent*, ¶ 24.

¶17     The PDD should not be applied in every case and was not intended to be applied by default in cases where the defendant is a public entity or person. *Kent*, ¶¶ 34, 38-39. Where an alleged duty arises, the PDD does not eliminate that duty merely because the defendant is a governmental entity. *Kent*, ¶¶ 34, 38-39. For example, premises liability includes specific duties owed to a plaintiff, which are sufficient to support a tort claim against a governmental entity. *Kent*, ¶ 38. If a private person can be found liable for injury to a plaintiff, then a governmental defendant may similarly be liable. *Kent*, ¶ 38 (citing *Gatlin-Johnson*, ¶ 19; § 2-9-101(1), MCA).

¶18     In *Gatlin-Johnson*, Gatlin filed suit following a severe head injury suffered by her daughter after falling from a slide in Riverside Park in Miles City. *Gatlin-Johnson*, ¶ 6. We reversed the district court's grant of summary judgment to Miles City and recognized that where facilities are open to the public that "does not mean the public duty doctrine applies to any negligence claim arising from that entry or use, or that liability for negligence can only be found" upon the establishment of a special relationship. *Gatlin-Johnson*, ¶ 20.

8

This Court concluded that it was error for the district court to have applied the PDD to avoid Miles City's duty of reasonable care in the maintenance of the park owed to Gatlin-Johnson. *Gatlin-Johnson*, ¶ 20.

¶19 Additionally, in *Kent* the Court again considered under which circumstances a governmental defendant does not owe a duty under the PDD. *Kent*, ¶ 23 (collecting cases). The issue in *Kent* involved a wrongful death claim arising from Casey Kent's injuries when skateboarding along the paved path in a subdivision. *Kent*, ¶ 1. The subdivision was part of a planned unit development (PUD), a private development that is granted greater flexibility in their proposed subdivision so that the project need not conform to applicable zoning and subdivision regulations to gain approval from the city. *Kent*, ¶ 3. The city granted conditional approval for the PUD and added specific conditions, including that in lieu of sidewalks the developers install a bicycle and pedestrian trail system within the PUD. *Kent*, ¶ 5. The city moved for summary judgment, arguing that it was not responsible for the maintenance of the walking path because they did not own the property or construct it. *Kent*, ¶ 12. The city further argued that it could not be held liable due to the PDD. *Kent*, ¶ 12. The district court granted the city's motion for summary judgment on multiple counts, including the plaintiff's claims for premises liability. *Kent*, ¶ 15. On appeal the plaintiff challenged the district court's application of the PDD to her negligence claim. *Kent*, ¶ 22. [2]

---

[2] Plaintiff did not appeal the district court's dismissal of her premises liability claim so this Court only looked to the applicability of the PDD to plaintiff's negligence claims. *Kent*, ¶ 30.

¶20    This Court concluded the district court wrongly applied *Prosser v. Kennedy Enters. Inc.*, 2008 MT 87, 342 Mont. 209, 179 P.3d 1178, leading it to incorrectly conclude that the city had no duty because it did not maintain the property. *Kent*, ¶¶ 41-43. The district court also erred when it concluded the PDD shielded the city from liability because none of the four exceptions to the PDD were applicable. *Kent*, ¶ 42. We explained the PDD should not be applied when the duty owed by the government sounds in generally applicable principles of law. *Kent*, ¶ 39. Hence, it was error for the district court to have concluded the plaintiff needed to show exceptions to the PDD of a special relationship or detrimental reliance. *Kent*, ¶ 41. Our opinion explained that if a private citizen could be found to owe a duty under premises liability, a duty of reasonable care may likewise be imposed on governmental defendants. *Kent*, ¶¶ 38-39.

¶21    Here, the District Court's error was not that it recognized that the PDD may apply to generalized governmental duties owed to the public at large. The error was in treating the ownership of the streetlight by NorthWestern Energy as categorically removing lighting conditions from the jury's consideration of Sara Da's premises-liability claim against the City. In essence, such a holding would permit a municipality to lease out responsibility for maintaining its premises to a third party, who in turn could assert that its lack of ownership of the premises absolves it from any liability arising from dangerous conditions. The relevant premises are the City's Intersection and crosswalk in a high, mixed-traffic area adjacent to a large college campus. Sara Da's theory is that the Intersection was unsafe the night that Sara Da' was struck by Nelson's vehicle because it lacked adequate pavement markings, adequate warning signage, and adequate illumination due to the inoperative

10

streetlight. Under *Gatlin-Johnson* and *Kent*, once the claim is properly understood as challenging the condition of City property under generally applicable tort principles, the PDD does not bar the claim. *Gatlin-Johnson*, ¶¶ 19-20; *Kent*, ¶¶ 41-42.

¶22 We do not hold that the City owed Sara Da' a special duty merely because the Intersection had been studied as part of a broader public-safety or school-route planning effort. Nor do we hold that a municipality has a general duty to patrol or monitor every streetlight owned or maintained by a utility company. Our holding is narrower. When a plaintiff alleges that a city-owned intersection was unsafe because of the combined conditions of its crosswalk markings, signage, and lighting, a district court may not categorically exclude evidence concerning an inoperative streetlight solely because the light was owned by a utility company. Ownership and maintenance responsibility remain relevant to breach, notice, causation, and comparative fault, but they do not automatically trigger the PDD.

¶23 Justice Baker's Dissent isolates its discussion to the City's duty regarding the inoperative streetlight and excludes Sara Da's theory that an inoperative streetlight, *in addition* to an unmarked and unpainted crosswalk, lack of adequate warning signage, glare, and expert testimony that Nelson's working headlights would have alerted Sara Da's attention before crossing the street, all contributed to the City's negligence and her injuries. The Dissent opines that because the jury rejected these claims, "The lighting is all that remains." Dissent, ¶ 57. However, the jury was prevented from hearing what experts considered was a major contributing factor to the dangerousness of the crosswalk—the lack of illumination due to an inoperative streetlight. The Dissent treats the jury's rejection of

11

the non-lighting theories as eliminating all dangerous-condition evidence. The Dissent is correct in its recitation of basic principles regarding a municipality's liability for street lighting; that is, that a municipality has no duty to light its streets and may choose to leave them unlighted and cannot be held liable for injuries by a traveler solely because the traveler chooses to walk in darkness. However, the Dissent's application of these rules sweeps too broadly and does not address the narrower question here of whether the inoperative streetlight, *together with other conditions* alleged as part of Sara Da's premises liability claim, created an unsafe condition for which the City is liable. Where a city undertakes to provide streetlights, and the traveler alleges that the inoperative streetlight *together with other conditions* created a dangerous and hazardous crosswalk, then the municipality may be held liable for injuries. Thus, while the Dissent is legally sound in cautioning against applying a general streetlighting duty to a municipality, this case concerns the narrower question of whether the jury may consider the inoperative streetlight together with other conditions that contributed to the safeness of the crosswalks and concomitantly Sara Da's injuries. Notably, the Dissent relies heavily on outside authority, primarily from California, and fails to substantially address two controlling cases in Montana that provide the proper analytical framework for premises liability of a municipality: *Gatlin-Johnson* and *Kent*.

¶24 Justice Rice's Dissent, on the other hand, when taken to its logical conclusion would appear to shield governmental entities from any premises liability except in extraordinary circumstances. Such an approach would be inconsistent with Montana's constitutional and statutory tort framework which provides that governmental entities are not immune from

liability for injury to person or property unless provided for by a 2/3 vote of each house of the Legislature. Mont. Const. art. II, § 18. The fundamental issue here is what facts a jury may consider when determining causation and damages.

**The Jury May Properly Consider the Inoperative Status of the Streetlight in Evaluating Whether the City Breached its Duty**

¶25 Premises liability claims are negligence claims, and a claimant's success depends on satisfaction of the common law principles of duty, breach, causation, and damages. *Babcock v. Casey's Mgmt., LLC*, 2021 MT 215, ¶ 16, 405 Mont. 237, 494 P.3d 322. Every property owner owes a general common law duty to use reasonable care in maintaining reasonably safe conditions on their property for persons who may enter, regardless of their invitee status. *Babcock*, ¶ 16 (citations omitted). Every landowner has "the duty to provide reasonably adequate notice of lurking or hidden dangers of which they are aware or should be in the exercise of reasonable care." *Babcock*, ¶ 16 (citations omitted); *accord* § 27-1-701, MCA ("each person is responsible not only for the results of the person's willful acts but also for an injury occasioned to another by the person's want of ordinary care or skill in the management of the person's property[.]"). Under Montana law, this duty of ordinary care extends to governmental defendants. *Gatlin-Johnson*, ¶ 18 (citing *Dobrocke v. City of Columbia Falls*, 2000 MT 179, 300 Mont. 348, 8 P.3d 71, *overruled on other grounds by Roberts v. Nickey,* 2002 MT 37, ¶ 14, 308 Mont. 335, 43 P.3d 263; *Henricksen v. State*, 2004 MT 20, 319 Mont. 307, 84 P.3d 38). Whether the owner of the premises properly fulfilled their duty to others when the property created a risk of harm is

a question reserved for the finder of fact. *Piedalue v. Clinton Elementary Sch. Dist. No. 32*, 214 Mont. 99, 102, 692 P.2d 20, 22 (1984); *Dobrocke*, ¶ 51 (citation omitted).

¶26    Foreseeability is central to the duty analysis in premises-liability cases, but it is not the only consideration.  In determining whether a duty exists, this Court has considered foreseeability together with public policy factors, including moral blame, prevention of future harm, the burden on the defendant, the consequences of imposing the duty, and the availability and cost of insurance.  *Gatlin-Johnson*, ¶ 13.  A district court's analysis of foreseeability is constrained to factors of whether the moral blame should attach to the defendant's conduct, what would further prevent future harm, the burden that avoidance of harm would impose upon the defendant, the public consequence of imposing a duty, and the availability and cost of insurance.  *Gatlin-Johnson*, ¶ 13 (citations omitted).

¶27    The District Court properly considered Restatement (Second) of Torts § 324A when deciding whether NorthWestern Energy, as the utility company that owned and maintained the streetlight, owed a duty to Sara Da'.  But that third-party-undertaking analysis did not resolve the distinct question of whether the City, as the owner and maintainer of the Intersection, owed ordinary premises duties regarding the condition of the Intersection as a whole.  *Maryland Casualty Company* explains when a party who undertakes to render services to another may owe a duty to a third person.  *Md. Cas. Co.*, ¶¶ 46-47 (collecting cases).  It does not, however, eliminate the ordinary premises-liability duties of a land possessor.  The City was not a third-party undertaker in the same posture as NorthWestern Energy.  The City owned and maintained the Intersection.  Sara Da's claim against the City was that the Intersection was unsafe because of the combined condition of the crosswalk,

14

signage, warnings, and illumination. The proper question, therefore, was not whether Sara Da' relied on NorthWestern Energy's undertaking under Restatement (Second) of Torts § 324A(c), but whether the alleged lighting condition was sufficiently connected to the City's premises that the jury could consider it in evaluating reasonable care, breach, causation, and comparative fault.

¶28 Based on the District Court's order granting NorthWestern summary judgment, the City argued that it did not owe a duty to maintain the streetlight. The City contended that the streetlight could not be a part of the City's premises without ownership, as it did not maintain the streetlight and the record does not show any contract regarding the streetlight between the City and NorthWestern Energy. This Court has recognized that a landowner's duty may extend to hazards affecting the safe use of the premises when the immediate source of danger is not owned by the defendant, if the hazard is sufficiently connected to the condition or use of the defendant's property. *Piedalue*, 214 Mont. at 101-03, 692 P.2d at 22-23.

¶29 In *Piedalue*, the defendant was the owner and operator of a trailer park. *Piedalue*, 214 Mont. at 100, 692 P.2d at 21. The plaintiff was driving on a through road on the defendant's property when she drove into an irrigation ditch where a bridge had once existed before its breakdown and removal. *Piedalue*, 214 Mont. at 100-01, 692 P.2d at 21. Because the defendant conveyed the irrigation ditch to the school district prior to the accident, the district court granted the defendant's motion for summary judgment. *Piedalue*, 214 Mont. at 101, 692 P.2d at 21-22. This Court held that the defendant's lack of title to the ditch did not, by itself, defeat the premises-liability claim because the alleged

15

hazard affected the safe use of the defendant's roadway. *Piedalue*, 214 Mont. at 101-03, 692 P.2d at 22. Like here, the defendant argued that it was not responsible for the dangerous condition as it existed on another person's land, i.e., the school district's property. *Piedalue*, 214 Mont. at 101, 692 P.2d at 21. *Piedalue* thus supports the narrower principle that ownership of the immediate hazard is not always dispositive when the hazard is functionally connected to the defendant's premises.

¶30 We reiterated the scope of this duty in *Dobrocke*. There, the district court granted the city summary judgment against the plaintiff's personal injury claims after she tripped on partially buried barbed wire that had originated from a private citizen's installation of a fence. *Dobrocke*, ¶¶ 11-12, 17. The injury occurred in an area that the city argued no duty could be imposed as it was in an unmaintained area lacking a sidewalk along a city road. *Dobrocke*, ¶ 15. This Court reversed the district court's grant of summary judgment. *Dobrocke*, ¶ 36. This Court held the city's duty was to "maintain the premises in a reasonably safe condition and to warn of any hidden or lurking dangers." *Dobrocke*, ¶¶ 31, 36. This duty to maintain reasonably safe premises extended to dangers that were known or obvious to the plaintiff if the "possessor should anticipate the harm despite such knowledge or obviousness." *Dobrocke*, ¶ 31 (quoting *Richardson v. Corvallis Pub. Sch. Dist. No. 1*, 286 Mont. 309, 321, 950 P.2d 748, 755-56 (1997)). We explained the city's duty was properly defined as "the degree of ordinary care which reasonable persons would use under the same or similar circumstances." *Dobrocke*, ¶ 31 (citations omitted). *Dobrocke* likewise confirms that a municipality may owe ordinary premises duties when an alleged hazard affects the safe use of municipal property, even if the hazard did not

16

originate from the municipality. The Court rejected a categorical rule that ownership of the instrumentality is always dispositive. *Dobrocke*, ¶ 36.

¶31 Here, it was foreseeable that a pedestrian using the City's crosswalk at night which lacked adequate lighting is exposed to an increased risk of being struck by a motor vehicle. The District Court's analysis of whether the streetlight was within the scope of the City's duty for Sara Da's premises-liability claim appears to turn on the first factor of foreseeability, whether moral blame should be attached to the defendant's conduct. The District Court's error seems rooted in its ruling in NorthWestern Energy's motion for summary judgment. In this order the District Court's analysis applied the test for third party liability under the Restatement (Second) of Torts § 324A(c), which looks for a claimant's reliance on the service of the defendant. The District Court's error is understandable because the NorthWestern Energy order required analysis of third-party-undertaking principles. But that analysis did not answer whether the City's own Intersection was maintained in a reasonably safe condition. Because Sara Da's claim challenged the condition of City property under generally applicable premises-liability principles, the PDD does not categorically bar the streetlight evidence.

¶32 We do not decide whether the City breached a duty of reasonable care or whether it had actual or constructive notice that the streetlight was out. Those questions remain for the factfinder on a properly developed record. We also do not decide whether the City was required to inspect every streetlight owned by Northwestern Energy. We decide only that the District Court erred by removing the streetlight from the jury's consideration as a matter of law.

¶33 A reasonable jury could consider the inoperative streetlight as part of the alleged condition of the Intersection. The light was located at the Intersection, existed to illuminate the crossing area, and was part of the physical environment in which pedestrians and drivers used the City's property at night. Whether the City exercised reasonable care with respect to that condition, including what the City knew or should have known, what it reasonably could have done, and whether any failure caused Sara Da's injuries, are factual questions.

¶34 The City's lack of ownership or direct maintenance responsibility for the streetlight is important evidence. It may bear heavily on breach, notice, causation, and allocation of fault. But it does not, by itself, transform an allegedly unsafe condition of the City's Intersection into a generalized public duty barred from jury consideration.

¶35 The out-of-state authorities upon which the City and the District Court rely do not require a different result. Those cases generally address whether a municipality or utility company has a freestanding duty to provide streetlighting or whether the absence of lighting alone creates liability. This case is narrower. Sara Da' does not argue that the City must light every street or that darkness alone creates municipal liability. She argues that this particular City-owned Intersection was unsafe because of the combined condition of its unmarked crosswalk, allegedly inadequate warning signage, and nonfunctioning light positioned to illuminate the crossing. Under Montana premises-liability principles, that theory should not have been categorically removed from the jury. Our holding is consistent with Montana's premises-liability jurisprudence because it leaves the ordinary negligence

18

questions to the jury while preserving the City's ability to contest notice, breach, causation, and comparable fault.

¶36  Whether the inoperative light contributed to the unsafe condition of the Intersection and to the collision was a factual question the jury should have been permitted to consider. *Piedalue* and *Dobrocke* support the principle that ownership of the immediate instrumentality is not always dispositive when the alleged hazard affects the safe use of the defendant's premises.  The District Court therefore erred by ruling, as a matter of law, that the streetlight could not be considered as part of Sara Da's premises-liability theory against the City and by excluding expert testimony addressing the light's alleged causal effect.

## CONCLUSION

¶37  Sara Da's claim was brought in part on a theory of premises liability against the City.  Montana law does not apply the PDD to claims under these circumstances.  Sara Da's experts came to trial prepared to offer testimony that being able to see pedestrians reduces the chances that a pedestrian is struck by a vehicle while crossing the street. Allowing the City to blame Northwestern Energy, and for Northwestern Energy to in turn blame the City, would allow for a defendant to lease out the maintenance of an integral safety function to a third party and avoid liability for harm caused by dangerous conditions of its property.  Because statutes, precedents, and the Montana Constitution make clear the City owed Sara Da' a duty of ordinary care to maintain the crosswalk, and it is foreseeable that inadequate lighting of an intersection could cause harm to persons utilizing the City's crosswalk, it was an error for the District Court to limit the scope of Sara Da's evidence

19

regarding the City's duty to exclude the streetlight.  Evidence regarding the lack of lighting should have properly been available for the jury's consideration.

¶38   The judgment of the District Court is reversed and the case is remanded for a new trial.

/S/ LAURIE McKINNON

We Concur:

/S/ KATHERINE M. BIDEGARAY
/S/ INGRID GUSTAFSON
/S/ JAMES JEREMIAH SHEA

Justice Jim Rice, dissenting.

¶39   I agree with the District Court's application of Montana's public duty doctrine, which was raised by the City as a defense in this case.

¶40   This is neither a road liability nor a premises liability case.  No allegations are made that the condition or design of the road caused the accident and resulting damages.  *See Faulconbridge v. State*, 2006 MT 198, ¶ 68, 333 Mont. 186, 142 P.3d 777 (the State has a duty concerning the original construction and design of roads "to keep its highways in a reasonably safe condition").  As for the street light, it is not a part of the road or a defect in the road, and thus is not a breach of a duty to maintain a road.  The City did not own, operate, or even possess the light and, therefore, the generally applicable law of landowner premises liability, wherein the City would have the duty of ordinary care to maintain its premises in a reasonably safe condition, does not attach to it.  *See Gatlin-Johnson v. City*

20

*of Miles City*, 2012 MT 302, ¶ 17, 367 Mont. 414, 291 P.3d 1129 (the public duty doctrine "does not apply where the government's duty is defined by other generally applicable principles of law[,]" such as premises liability). Rather, the claim here is based upon the design of a traffic control system, and about the allocation and timing of the expenditure of resources for traffic system upgrades that the City administers city-wide, which are inherently discretionary government decisions made for the welfare of the entire community.[1]

¶41 As delineated in the pre-trial order, Sara Da's contentions addressed the design of traffic safety devices and the City's decisions about when and where to provide the devices. First, she alleged as follows against the City regarding the cause of the accident:

> More likely than not, a painted crosswalk and lighting would have helped Nelson see Nesta in the crosswalk.
>
> More likely than not, advance warning of the crosswalk ahead would have placed Nelson on notice of the crosswalk.
>
> More likely than not, a Pedestrian Crossing sign on the western crosswalk would have alerted Nelson to the presence of a crosswalk and reduced the confusion caused by Pedestrian Crossing sign only on the eastern crosswalk . . . .
>
> More likely than not, an illuminated or flashing crosswalk sign would have alerted Nelson to the presence or likelihood of pedestrians.

---

[1] The Court responds that this Dissent's position would appear "to shield governmental entities from any premises liability except in extraordinary circumstances," Opinion, ¶ 24, but this is a misreading. As we have held, government entities are indeed subject to landowner premises liability claims because the government's duty in such cases is defined by "generally applicable principles of law." *Gatlin-Johnson*, ¶ 17. Rather, the point made here about that issue is that Sara Da's claim, as defined by her contentions, does not lie in landowner premises liability, for the reasons stated herein.

More likely than not, a working streetlight would have reduced the glare of oncoming headlights.

The glare also would have affected the pedestrian assessments of oncoming traffic.

Plaintiff alleges the inoperable streetlight and unpainted, unmarked, and unsigned crosswalk caused and/or substantially contributed to Nesta's severe injuries she received when Nelson's car hit her.

¶42 Sara Da' also contended the following regarding the City's maintenance of traffic systems and its decisions regarding implementation of upgrades:

Three years before Nesta was hit, a 2016 engineering study prepared for the City recommended the installation of a crosswalk and a rectangular rapid-flashing beacon (RRFB) at this very intersection – W. College Street and S. 15th Ave. But the City chose not to implement those recommendations. . . . Instead, [the City] claims it is waiting to make the recommended installations until a contemplated street-widening project is completed.

The City has a duty to exercise its discretion soundly and reasonably and upon a careful review of the streets and crosswalks over which it has authority.

The City of Bozeman maintained, designed, and controlled the relevant road and crosswalk referenced above, and "engineering judgment" does not absolve it from its failures because "engineering judgment" does not trump other guidelines or take away the necessity of studies upon which that judgment would be based.

¶43 Thus, fundamentally, Sara Da's claim against the City is a challenge to a local government's allocation of resources regarding the design and installation of traffic control devices, about which Sara Da' alleges the City abused its discretion.

¶44 Generally, government entities "are subject to general tort liability to the same extent as private parties." *Plakorus v. Univ. of Mont.*, 2020 MT 312, ¶ 13, 402 Mont. 263, 477 P.3d 311 (citing § 2-9-102, MCA). However, a government entity's duties are not

22

always identical to a private party because government acts in ways that private parties do not, including in cases where "the public entity truly has a duty owed only to the public at large." *Gatlin-Johnson*, ¶ 17. The public duty doctrine is a framework for determining government liability in the context of the provision of services to the public generally. "The general rule of the public duty doctrine is a special application or variant of the traditional common law limitation on foreseeability-based duty of care narrowly applicable to government entities and actors under certain circumstances." *Md. Cas. Co. v. Asbestos Claims Court*, 2020 MT 70, ¶ 28 n.22, 399 Mont. 279, 460 P.3d 882. "The public duty doctrine prevents individual members of the public from using tort liability to constrain unduly a municipality's discretion to use its limited resources to promote the general welfare." *Prosser v. Kennedy Enters.*, 2008 MT 87, ¶ 18, 342 Mont. 209, 179 P.3d 1178 (citing *Nelson v. Driscoll*, 1999 MT 193, ¶ 21, 295 Mont. 363, 983 P.2d 972).[2]

¶45 In our precedent, the Court found in *Prosser* that land use regulations, as applied to individual properties by the City of Hamilton, were adopted for the benefit of the community as a whole, and did not impose a duty upon the City to protect residents in the vicinity of a city-approved building modification from the disruption it generated, a case analyzed under the special relationship exception to the public duty doctrine. *Prosser*,

---

[2] There are other exceptions to the public duty doctrine, but none have been alleged in this case other than the exception for claims that are governed by "generally applicable principles of law," *Gatlin-Johnson*, ¶ 17, such as landowner premises liability, which, discussed above, should not govern here.

¶ 42.[3]  Similar to the facts of this case, the City cites a decision by the Tennessee Court of Appeals that held that the public duty doctrine applied to claims arising out of a town's development and implementation of a traffic control plan, specifically for a special public event, a festival, at which a man drove his car through the barricades placed by the town and injured two pedestrians. *King v. Town of Selmer*, 2024 Tenn. App. LEXIS 9, 2024 WL 81516 (2024).  Rejecting the pedestrians' claims against the Town, the court concluded that "the festivalgoers and the public at large were one and the same.  Thus, the undisputed evidence shows that the Town owed a duty to the public at large when it designed and implemented the traffic-control plan.  Accordingly, the public-duty doctrine applied in this case . . . ." *King*, *18–19.

¶46    Based upon the claim against the City as it has been here formulated by Sara Da', I would conclude that the breach of duty as alleged falls under the City's duty to provide traffic control devices city-wide, and its allocation of resources to accomplish that purpose, and therefore came under the public duty doctrine as a duty to the public at large.  I would therefore affirm the District Court.

/S/ JIM RICE

---

[3] There are a number of government liability cases in our precedent that were decided without discussion of the public duty doctrine because the defense was apparently not raised, for example: *Faulconbridge*; *Vancos v. State*, 2024 MT 30, 415 Mont. 187, 543 P.3d 605; *Dobrocke v. City of Columbia Falls*, 2000 MT 179, 300 Mont. 348, 8 P.3d 71; *Henricksen v. State*, 2004 MT 20, 319 Mont. 307, 84 P.3d 38; *Kaiser v. Town of Whitehall*, 221 Mont. 322, 718 P.2d 1341 (1986); *Richardson v. Corvallis Public School District*, 286 Mont. 309, 950 P.2d 748 (1997); and *Bonilla v. Univ. of Mont.*, 2005 MT 183, 328 Mont. 41, 116 P.3d 823.  Of course, the decision to raise the defense is the individual government entity's to make based upon its assessment of the case.

Justice Beth Baker, dissenting.

¶47    The essential disputes between the parties are (1) the City's duty, or lack thereof, to keep the streetlights on its public ways operational and functioning and (2) the City's liability, or absence thereof, for the non-functioning streetlight at the crosswalk involved in this case.  I begin with a general overview of a municipality's common-law duty, discuss how it comports with Montana law on the duties of a possessor of property, and conclude with the application of these principles to the case presented in this appeal.  For the reasons that follow, I dissent from the Court's decision to order a new trial.

¶48    Under the common law, a municipality generally is liable for damages for injuries "due to defects or obstructions in public ways" and has a duty "to exercise reasonable care to keep them in a reasonably safe condition for travel."  19 Eugene McQuillin, *The Law of Municipal Corporations* §§ 54:1, 54:3, at 79, 88 (3d ed. 2023); *see also Warning v. City of Joliet*, 974 N.E.2d 954, 960 (Ill. App. Ct. 2012) ("A municipality has a common law duty to maintain its property in a reasonably safe condition."); *Silvestri v. Village of Bronxville*, 106 A.D.3d 901, 902 (N.Y. App. Div. 2013) (same).  "[T]he duty of a municipality to use ordinary care to keep its streets in condition for use includes the duty, where there are dangerous obstructions, declivities, or excavations in or near the street, . . . to take proper precautions to guard against accidents by the use of railings, barriers, lights or the like, especially at night."  19 McQuillin, § 54:148, at 602-03.

¶49    "Although a city is not an insurer of the safety of its crosswalks, the liability for defective streets extends to defects in crosswalks for the accommodation of pedestrians in crossing from one side of a street to another, and of motorists, and recoveries have been

permitted against municipalities for injuries occasioned by various obstructions and defects." 19 McQuillin, § 54:142, at 583-86. "A municipality's obligation to install street lighting, or to maintain existing streetlights, arises only in those situations 'in which illumination is necessary to avoid dangerous and potentially hazardous conditions.'" *Silvestri*, 106 A.D.3d at 902 (quoting *Thompson v City of New York*, 585 N.E.2d 819, 820 (N.Y. 1991)); *see also Carty v. Colleran*, 238 A.D.3d 845, 846 (N.Y. App. Div. 2025) (reversing summary judgment for City when the undisputed evidence was that multiple reports had been made for months of malfunctioning streetlights and fact issues remained whether City's conduct resulted in a dangerous condition that was a proximate cause of the accident); *Estate of Flygare v. Ogden City*, 2017 UT App 189, ¶¶ 13-15, 405 P.3d 970 (quoting *Fishbaugh v. Utah Power & Light*, 969 P.2d 403, 405-06 (Utah 1998)) (noting that although "a city has no duty to light an otherwise safe street[,]" it "does have the clear duty to maintain its streets reasonably safe for travel" and "to warn of dangerous conditions on its streets."); *Warning*, 974 N.E.2d at 960.

¶50 There is no duty, under the common law or under Montana statute, for a municipality to light its streets, though cities have the authority to do so. Section 7-14-4105(1), MCA; 19 McQuillin, § 54:167, at 650-52. If a municipality undertakes to light its streets, it may be liable where the lights furnished are insufficient; but "even if it is the duty of a municipality to light its streets, it is only required to do so in a manner that will make them reasonably safe for travel." 19 McQuillin, § 54:167, at 653-55. "In other words, if there are dangerous excavations, holes or obstructions in a street, the failure of the municipality to light the street is material in determining whether

26

it has exercised reasonable care to keep the street in a safe condition." 19 McQuillin, § 54:168, at 657-58. "A duty to light, and the consequent liability for failure to do so, may arise only if there is some peculiar condition rendering lighting necessary in order to make the streets safe for travel." *Mixon v. Pac. Gas & Elec. Co.*, 207 Cal. App. 4th 124, 133 (Cal. Ct. App. 2012) (internal quotations omitted; citation omitted). "In other words, a prior dangerous condition may require street lighting or other means to lessen the danger but the absence of street lighting is itself not a dangerous condition." *Mixon*, 207 Cal. App. 4th at 133[1]; *see also Estate of Flygare*, ¶ 15 (affirming that "a city's duty to install and maintain streetlights is dependent upon the existence of a hazardous condition" (internal quotations omitted; citation omitted)). Courts have recognized that a crosswalk is "not dangerous in the abstract" and does "not constitute a peculiar condition rendering lighting necessary." *Plattner v. City of Riverside*, 69 Cal. App. 4th 1441, 1445 (Cal. Ct. App. 1999). "The mere placement of a crosswalk on a busy but otherwise safe street does not create a hazardous condition and therefore is insufficient to create a genuine issue of material fact." *Estate of Flygare*, ¶ 22 (citing *Thompson*, 585 N.E.2d at 821) (plaintiff did not show a hazardous condition on the basis of a non-functioning streetlight merely because the affected roadway "is large and at times busy—a condition which exists at many city intersections"); *see also* 40 Am. Jur. 2d *Highways, Streets and Bridges* § 342 (2019) ("[A]

---

[1] California has codified these common-law principles in its Government Code section 835, along with a definition of "dangerous condition" in Government Code section 830. "A dangerous condition exists when public property 'is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself,' or possesses physical characteristics in its design, location, features or relationship to its surroundings that endanger users." *Mixon*, 207 Cal. App. 4th at 131 (citations omitted).

duty to light a street, and the consequent liability for the failure to do so, may arise only if there is some peculiar condition rendering lighting necessary in order to make the streets safe for travel.").

¶51    In *Plattner*, the plaintiff was hit by a car while walking across the street in an unlighted crosswalk. *Plattner*, 69 Cal. App. 4th at 1443. The court upheld summary judgment in favor of the City of Riverside over plaintiff's contention that "once the city installed the light it had a duty to maintain that streetlight in working order." *Plattner*, 69 Cal. App. 4th at 1444. The court reasoned that "darkness is a naturally occurring condition that the city is under no duty to eliminate. Thus, the fortuity of locating the streetlight at a spot where it illuminates the crosswalk does not render the crosswalk dangerous without the light." *Plattner*, 69 Cal. App. 4th at 1445. The court rejected the plaintiff's contention that "by providing a crosswalk and thereby encouraging pedestrians to cross the street at that location the city invited the public to rely on the streetlight and thus created a duty to maintain the light." *Plattner*, 69 Cal. App. 4th at 1445. The court added,

> [I]t is obvious to all when a streetlight is out. Therefore, a pedestrian such as plaintiff cannot claim she relied on the inoperative streetlight in order to cross the street. Moreover, unlike traffic lights and stop signs which are the only means by which traffic is controlled, streetlights are not the only or even the primary means by which streets are illuminated for vehicular traffic. Vehicle headlamps are designed and used for that purpose.

*Plattner*, 69 Cal. App. 4th at 1446. The Georgia Court of Appeals applied similar principles under common law in *Glover v. Georgia Power Co.*, 819 S.E.2d 660 (Ga. Ct. App. 2018), a hit-and-run case brought by the only surviving pedestrian hit while attempting to cross an unlit highway. The court explained that "[i]n those cases in which

28

it is held that after a city has undertaken voluntarily to light its streets, a failure to do so might furnish a ground of liability, it will be found that the facts involved *also* some defect, obstruction, or excavation in the street." *Glover*, 819 S.E.2d at 378 (citations omitted). The court referenced cases involving "some *physical impediment* that was either in or a part of the roadway, and evidence regarding inadequate lighting bore on whether the street was being maintained in a reasonably safe condition." *Glover*, 819 S.E.2d at 380 (citations omitted).

¶52 This overview of the common law backdrops Montana's similar principles governing the duties of a landowner, including municipalities and other government entities. We have not applied the public duty doctrine in such cases, where the plaintiff's injury is alleged to result from the government's failure to maintain its premises in a reasonably safe condition. "Property owners owe a duty of ordinary care to keep the premises reasonably safe and to warn people of any hidden or lurking dangers." *Henricksen v. State*, 2004 MT 20, ¶ 27, 319 Mont. 307, 84 P.3d 38 (quoting *Welton v. Lucas*, 283 Mont. 202, 207, 940 P.2d 112, 115 (1997)) (concluding that State owed a duty of ordinary care to prevent children from falling through the balusters in university library). "[A] possessor of the premises may [not] avoid liability simply because a dangerous activity or condition on the land is open and obvious . . . . Rather, the possessor of the premises may only be absolved from liability for injuries resulting from open and obvious dangers if he should *not* have anticipated harm to occur." *Richardson v. Corvallis Pub. Sch. Dist. No. 1*, 286 Mont. 309, 321, 950 P.2d 748, 756 (1997); *see also Dobrocke*, ¶ 30 (quoting *Richardson*, 286 Mont. at 313, 950 P.2d at 751) ("We have consistently held as a

29

matter of law that 'the owner of a premises has a duty to use ordinary care in maintaining his premises in a reasonably safe condition and to warn of any hidden or lurking dangers.'"); *Gatlin-Johnson*, ¶ 20 (applying "clear and established rules of premises liability" where plaintiff claimed injury to her daughter resulted from the city's negligent failure to maintain a safe depth of impact-absorbing material on city playground); *Kaiser v. Town of Whitehall*, 221 Mont. 322, 325, 718 P.2d 1341, 1343 (1986) (holding that the town owed plaintiff and "the general public lawfully traveling on a public sidewalk . . . a duty to exercise ordinary care and to keep the premises (sidewalk) reasonably safe"); *Bonilla v. Univ. of Mont.*, 2005 MT 183, ¶ 16, 328 Mont. 41, 116 P.3d 823 (holding that University had duty to its patrons to maintain safety in arena during concert); *see also Faulconbridge v. State*, 2006 MT 198, ¶¶ 90-91, 333 Mont. 186, 142 P.3d 777 (holding that "[w]hen it is [the] State's responsibility to design, maintain, and/or repair a roadway*,*" the conduct of the driver "does not relieve the State of liability").[2]

¶53   The City argues that because it did not own, operate, maintain, or control the streetlight, premises liability cannot attach for its alleged failure to maintain it.   But municipalities "have a nondelegable duty to maintain their streets in a reasonably safe condition for travel."   *Estate of Flygare*, ¶ 12; *see* 19 McQuillin, § 54:26, at 174-76 (discussing that a municipality "cannot evade its responsibility for [the] care and

---

[2] The Opinion frequently cites our decision in *Kent*, but *Kent* was not a premises liability case. The trial court in *Kent* concluded that the City of Columbia Falls had no duty under premises liability because the City did not own or maintain the property on which the decedent was injured. *Kent*, ¶ 30.  The plaintiff "[did] not appeal the court's ruling pertaining to premises liability." *Kent*, ¶ 30.

supervision [of its streets and sidewalks] and thus escape liability for any damage resulting from the failure of the person or corporation, to whom such care and supervision are delegated, to use that ordinary care and diligence to keep such streets or sidewalks in a reasonably safe condition for travel. The primary obligation to maintain public sidewalks in a reasonably safe condition rests on the municipality."). As we stated in *Kaiser*, "In Montana, the sidewalk is owned by the city. The general rule has been and still is that the duty to keep a public sidewalk in reasonable repair is on the city and when an accident occurs on a public sidewalk, liability, if any, attaches to the city." *Kaiser*, 221 Mont. at 325, 718 P.2d at 1343 (citations omitted). The City is on the right track, however, when it argues, citing *Estate of Flygare*, that "no physical condition of the roadway or crosswalk existed that caused the alleged injury." Because darkness alone does not create a dangerous condition, whether the City owed a duty to maintain the streetlight is dependent on an otherwise dangerous condition in the intersection. *See Mixon*, 207 Cal. App. 4th at 139-40 (upholding summary judgment for public utility—which could not be "charged with greater liability than the public entity itself"—where "[i]nstallation of the streetlight was not necessary to obviate a prior dangerous condition, the low wattage streetlight did not create a risk greater than the risk posed by the total absence of a streetlight, and plaintiffs did not forgo other protective actions in reliance on the streetlight").

¶54    Montana premises liability law shares the underlying threshold inquiry discussed in the crosswalk/lighting cases cited above: the first predicate for liability is a "defect or

dangerous condition" or a "hidden or lurking danger."[3] In *Dobrocke*, ¶¶ 11, 46, the "rusted barbed wire imbedded in the ground" on which the plaintiff tripped while walking at night "was a hidden or lurking danger that would have been discovered by a city worker mowing the grass or raking the leaves." But in *Richardson*, no liability attached because the plaintiff failed to provide evidence that the ice or snow on the sidewalk she traversed without incident earlier in the day created a dangerous condition. *Richardson*, 286 Mont. at 323-24, 950 P.2d at 757. We similarly upheld summary judgment in *Bonilla*, a case in which the plaintiff was injured when a University-owned chair in which he was seated during a concert broke into pieces under his weight, because there was "no evidence indicating that any action or inaction by the University rendered the chair unsafe or of poor quality." *Bonilla*, ¶ 18. In *Wiley v. City of Glendive*, 272 Mont. 213, 900 P.2d 310 (1995), where the plaintiff broke her ankle after slipping on a metal pullbox cover in the sidewalk, we noted the city's duty to keep its sidewalks and highways in a reasonably safe condition but held that the plaintiff had not established a material question of fact regarding breach. The question of law before the Court was: "did a defect or dangerous condition exist in the sidewalk of sufficient magnitude to cause a reasonable person to conclude that an accident

---

[3] The trial court instructed the jury, in accordance with this law, that the City had a duty to exercise ordinary care to keep its premises reasonably safe for all persons who foreseeably might come upon them, and to warn such persons of any hidden or lurking danger on the premises. The court instructed further that the City's duty of ordinary care applied to any condition on the premises "even if the danger is known or obvious to the plaintiff, unless the defendant could not foresee the injury."

32

was likely to occur as a result of that condition and, if so, did the State and the City have notice of the defect."[4] *Wiley*, 272 Mont. at 218, 900 P.2d at 313. We observed,

> Although expert testimony established that the pullbox was twice as slippery as the sidewalk, the Wileys were unable to demonstrate that this condition fell below any acceptable standard or constituted a defect. Without showing that a defect or dangerous condition existed, the Wileys were not able to show that the State or the City breached its duty to them.

*Wiley*, 272 Mont. at 218, 900 P.2d at 313.

¶55 The record in this case likewise does not substantiate a "defect" or an otherwise "dangerous condition . . . of sufficient magnitude" at the crosswalk where Sara Da' was hit. *Dobrocke*, ¶ 41. Sara Da's contentions against the City, as summarized in the Final Pretrial Order, were that the inoperative streetlight and unpainted, unmarked, and unsigned crosswalk caused and/or substantially contributed to her injuries and that advance warning of a crosswalk, a painted crosswalk, appropriate signage, and a working streetlight would more likely than not have allowed the driver to take corrective action and avoid hitting Sara Da'. To support these contentions, Sara Da' included in her summary judgment submissions the opinion of her expert Gary Norris that the crosswalk was unsafe because of the lack of lighting, pedestrian ahead warning signs, rectangular rapid flashing beacons (RRFBs), and pavement markings. Norris opined that the inoperative streetlight created a nighttime glare that obstructed the view of crossing pedestrians and that, even in its

---

[4] This Court clarified in *Dobrocke* that *Wiley*'s reference to notice "was largely dicta" and that Montana law does not require actual or constructive notice of the defect. *Dobrocke*, ¶ 41. "Rather, the issue [is] whether the plaintiff had established that a defect or dangerous condition existed . . . of sufficient magnitude to cause a reasonable person to conclude that an accident was likely to occur as a result of that condition." *Dobrocke*, ¶ 41.

operable state, the light would not provide sufficient lighting for the intersection and crosswalk. She also cited the disclosures of Nelson's expert James M. Miller, who opined that the darkness of the intersection, in combination with oncoming headlights, would have prevented any driver from observing Sara Da' in the traffic lanes, coming to a complete stop before hitting her or sounding their horn, or swerving to avoid her; he theorized that if the streetlight had been working, it would have reduced the glare from oncoming headlights and there would have been a reasonable probability that the oncoming vehicle would have detected Sara Da' sooner.

¶56 At trial, after the court excluded opinions about the effect of the streetlights, Norris opined that the City was negligent because it failed to install a RRFB at the crosswalk even though it was recommended to the City in 2016 and 2017; failed to include pavement markings to indicate the location of the crosswalk; and employed limited signing on only one side of the road. Norris added, "and also the street lighting," but the trial court sustained the City's objection to this reference. Miller testified that the glare from the oncoming lights in combination with the age of Nelson's headlights impacted Nelson's ability to see Sara Da' in the road. The trial evidence also showed that sixteen million cars went through the intersection in the five years preceding the accident. There were 46 crashes in the past 20 years, but this was the first pedestrian-vehicle accident.

¶57 I share many of Justice Rice's concerns that none of Sara Da's allegations against the City amounted to a defect, dangerous condition, or peculiar condition that rendered the roadway unsafe at the location of the crosswalk. Given the posture of the case, though, I find it unnecessary to explore the reaches of the public duty doctrine's application to road

34

liability cases. The case comes to us on appeal after the jury found that the City was not negligent for failing to exercise ordinary care to keep the intersection reasonably safe. Because of the District Court's pretrial ruling, neither party presented any evidence about the streetlight. The jury rejected all of Sara Da's contentions and expert opinions regarding other conditions that she alleged rendered the crosswalk unsafe. On this record, there is no basis upon which to conclude that the crosswalk was in a "dangerous condition" or had any "hidden or lurking dangers." The lighting is all that remains. But the verdict means that the City could have no remaining duty because the crosswalk otherwise featured no "peculiar condition rendering lighting necessary" to make it safe for travel. 40 Am. Jur. 2d *Highways, Streets and Bridges* § 342; 19 McQuillin, § 54:167 at 653-55. Based on the weight of authority discussed above, the absence of lighting cannot by itself be a hidden or lurking danger or a dangerous condition of the intersection. The Court acknowledges as much, noting that the non-functioning streetlight is but one factor the jury should have been allowed to consider. Opinion, ¶¶ 31-33. Given that the jury ruled out all the other factors, there is no ground supported by this record upon which Sara Da' could prevail in her claim for premises liability against the City.

¶58    I would affirm the judgment of the District Court.


                                                            /S/ BETH BAKER


Chief Justice Cory J. Swanson joins the Dissent of Justice Beth Baker.


                                                            /S/ CORY J. SWANSON

35